## No. 12,838.

JOHN WILSON VS. LOUISIANA AND NORTH WESTERN RAILROAD COMPANY.

### SYLLABUS.

Original judgment amended as to amount to $1,000 ; otherwise re-affirmed.

1. It is the duty of the party controlling a railroad train to advise himself be fore it starts not only as to one part of the existing situation, but of the whole, and govern himself accordingly.

2. Though a train be a "repair train" and the employees thereon may have as sumed in accepting employment thereon that they may be in greater danger of accident than they might be under other circumstances, they have the right to assume that this very fact of increased danger being known to the conductor, he will guide his conduct so as to minimize the danger by the increased care and precautions which the occasion calls for.

A railroad company which permits its tracks to become unsafe should be held to an increased responsibility for the manner in which its trains are run on such a track.

ON APPEAL from the Third Judicial District Court for the Parish of Claiborne. *Barksdale, J.*

*J. C. Theus, Dorman, Reynolds & Dorman,* and *McClendon & Seals,* for Plaintiff and Appellee.

*John A. Richardson* for Defendant and Appellant.

Argued and submitted June 3rd, 1898.

Opinion handed down June 21st, 1898.

Rehearing granted November 21st, 1898.

Argued and submitted on rehearing January 24th, 1899.

Opinion handed down on rehearing May 29th, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiff asked for a judgment against the de-fendant for damages for injuries received by him through the derail-ment of a car operated by officers and employees of the defendant company, on which car he was riding at the time. He averred that he was an employee of said company at the time and on said car in the discharge of his duty as such. That the accident was caused by the negligence and carelessness of the parties in charge. The case was tried by the court, which rendered judgment in favor of the defendant. Plaintiff appealed, and on appeal the judgment was al-tered to one of non-suit. The pleadings and facts of the case were identical with those of Smith against the same company, reported in 49th Ann., 1325—the case itself is reported in the same volume, page 1330.

Plaintiff renewed his demand in the present suit. Defendant pleaded the general issue.

After defendant had answered pleading the general issue, defend-ant filed a plea of estoppel, alleging that plaintiff had instituted suit against it for the identical cause of action in which he set up the cause of the injury—that he could not change the judicial admis-sion of his first suit; that he could not add to nor take from the same so as to show a different cause for the injury.

This exception was based upon the claim that the allegations of plaintiff in his second were inconsistent with those in his first suit, and sought to change the issues between the parties.

Plaintiff's allegations in his first petition, touching the accident, were as follows:

"That said derailment and injuries and loss were occasioned by the gross, wanton and criminal negligence of said railroad company and its servants, agents and employees who were superior in authority to plaintiff. That at said time and place said train and car on which plaintiff was riding was thrown from the track by one or more pieces of timber or wood falling or being carelessly dropped by the employees from the engine tender or bin, or other places of storing for carrying wood or timber on said train or locomotive or some of the attachments thereto, which caught under the wheel or wheels of said train of cars or locomotive, or both, which derailed and threw said car on which petitioner was riding and all or a part of the train, in-cluding locomotive and tender, from the track, and in the wreck he

was damaged by the fall and being struck by falling timbers and cross ties and the car or cars and other parts of the train or locomotive or tender and other causes occasioned by said wreck. That the wreck and damage to petitioner was caused by the said defendant company failing to provide proper and safe places or apartments for storing or carrying said wood or timber and from the failure of said company and its employees who were in command of the train to have said wood or timber properly loaded or stored, and from the careless and negligent handling of said wood and timber by the employees and servants of said company, and which wood or timber fell from the place where it was stored or piled or by the servants or employees of said company's careless and negligent handling of said wood or timber while said train was running or in motion. That it was no part of petitioner's duty to superintend the loading of said wood or timber, and that said injury and loss was caused by no negligence or fault of his, but wholly by the negligence and fault of the defendant company or its servants and employees in charge of the train, or for the want of necessary appliances for the safety of the employees of the company.

In plaintiff's second petition he averred that at said time and place said car on which petitioner was riding was thrown from the track by a piece of timber or wood falling from the tender or usual place of carrying wood on said train, locomotive or attachments thereto, which caught under the tracks or wheels and axles of said car on which petitioner and others were riding which derailed said car—which car after running off the rails on to the road bed and rotten ties, ran on to or struck a rotten bridge or trestle of said company, which gave way and precipitated petitioner and others and said car and cross ties to the ground a distance of about twelve feet. That at the time of said wreck said train was being run at a high and dangerous rate of speed over a dangerous and unsafe track with rotten cross ties, and the rails on said tracks were low and sunken in places and high in other places, and the cross ties and road bed, together with the unsafe condition of the rails and the great and dangerous rate of speed caused violent rocking, jumping and shaking of said locomotive, tender and cars. That the defendant company did not provide safe and proper apartments for storing and carrying said wood, and said company and its agents and employees who were in command of petitioner caused said fire wood to be improperly loaded and carelessly and negligently

piled, at least, three feet above the outer wall or rim of said tender or wood bin without there being any guard or other protection to prevent said wood or timber from falling over the outer wall or rim of said wood bin or tender, and that said wreck was caused by the fall of said wood or timber and the above alleged reckless running and defective road bed, etc., etc.

That it was no part of petitioner's duty to superintend the loading or storing of said wood or timber, or to control the rate of speed, or to examine or repair the track, road bed, or anything in connection therewith, and his only duties were to obey his superiors in command, he being a common laborer and having no dominion or control over any part of said train or road bed, or anything connected therewith other than as a common laborer, and that the said injury and loss was caused by no negligence or fault of his, but wholly by the fault of the defendant company and its agents and vice principals in charge of said train, and for want of necessary appliances for the safety of the employees of said company, and the defective road bed and track and reckless running, etc., etc., as above stated.

In defendant's plea of estoppel, it asked that all allegations of plaintiff's petition, which were different from, or changed, the allegations and judicial admissions in the suit first filed, be stricken out, and that no evidence be permitted to be received under the same.

No separate action was taken upon this exception. The case was tried twice before a jury. The first trial resulted in a verdict of five thousand dollars for the plaintiff, but the verdict was set aside and a new trial granted.

The second trial resulted in a verdict of twenty five hundred dollars for plaintiff, and judgment was rendered in accordance therewith, though the court, in refusing an application to have the verdict set aside and a new trial ordered, expressed its disapproval of the verdict, assigning as its reason for entering judgment that it thought the litigation should be brought to an end.

The first suit of the plaintiff against the defendant was by consent of parties, taken up at the same time with that of Smith vs. The La. & N. W. R. R. Co., and upon the same testimony, except in so far as testimony as to the extent of injuries received by each and the amount of the damage claimed by each, made special testimony necessary.

In the opinion in the Smith case (49th Ann., 1328) the court said: "As the case was left by the witnesses it seems clear that the piece of

wood was the proximate cause of the accident, but without showing directly that the stick of wood was on the track through the fault of the defendant, its servants or agents, the company is not connected with the proximate cause so as to make it responsible. The break in the continuity of the testimony is in the manner in which the stick occasioned the derailing of the train, and by whose fault it was placed in position to produce the same."

It was in view of the possibility of plaintiff's being able in a second suit to supply this missing link that the judgment, originally a final one against him, was altered to one of non-suit.

The testimony taken upon the first trial was considered in the second, both sides introducing additional evidence. Plaintiff introduced two new witnesses whose testimony was to the effect that, at the time of the accident, they were riding upon a flat car directly in rear of the tender on which the fire wood for the train was piled up; that as they were sitting, they faced the tender; that directly in front of and facing one of them, a man by the name of Crawford was sitting on the rear end of the tender. Each one of them testified to having seen the piece of wood which the pleadings refer to, fall from the rear end of the tender to the track between the tender and the flat car just behind, and upon which they were sitting; that, immediately afterwards, there was a violent jerking of the cars, followed by the derailment of the same. Neither saw the piece of wood strike the ground, nor knew how or where it came in contact with the cars. Both say that Crawford did not touch the wood, or have anything to do with its fall. They differ somewhat as to the point from which it fell; one stating it fell from a point near the eastern side of the tender, the other, from the western side, but, we think, the establishment of the particular point from which it fell an immaterial fact, except in so far as it might tend to effect the credibility of those witnesses. We do not understand defendant to attach any importance to it, other than for that purpose.

The character of those two witnesses was not impeached. The effect of their respective statements is weakened only in so far as the fact that they were not in accord as to the point from which the stick of wood fell, might be calculated to throw doubt upon their accuracy— if that fact were important—Crawford was not put upon the stand.

From whatever side the piece of wood fell, it obviously struck in

such a manner as to occasion, as the immediate and direct result of its falling, the derailment of the cars.

The question is, how came it to fall? Plaintiff, in his pleadings, says the wood upon the tender was piled three feet high upon a tender and left there without guards, while defendant undertook to show that it was only two feet high at the middle, and that the fireman straight-- ened it out after it had been placed upon the tender. There is very considerable difference in the testimony as to the rate of speed at which the train was running at the time of the accident. It is claimed by plaintiff that the train being behind time in consequence of having had to take on a quantity of cross-ties, was being hurried forward in order to reach Athens before the passenger train, coming from Homer, should reach that place. One of the witnesses said that Mr. Beardsley, the manager of the road, hurried the conductor, giving him (he said) the "high ball" (orders to go faster) several times. Mr. Beardsley, though on the train at the time, did not take the stand as a witness. The testimony, we think, shows that the road-bed, the ties, and the track, were in very bad condition at the point where the acci- dent occurred, and for some distance in front and in the rear of that place. We are satisfied that the stick of wood was detached from its position by the rocking of the cars, caused by rapidly running cars over the uneven and defective road-bed and track at that point. We are also satisfied that the immediate cause of the derailing of the cars was the falling of this piece of wood, and its being caught under the wheels or trucks of one of the cars. It is contended that the plaintiff was one of the parties who loaded the tender. That he went on the train voluntarily as an employee of the corporation, with knowledge of the situation and condition of the road (if, in fact, it was in bad con- dition), and that in accepting service he assumed the risks of employ-- ment taken under such conditions. Employees entering the service of a railroad company have a right to assume, should it fail to comply with its duty of keeping its road-bed, ties, and track throughout, in safe condition, that it will at least meet and compensate its failure in this respect, by steps taken by it and those having charge of its trains, to remedy and save the situation from danger for the benefit of its passengers and employees by a special care taken and precaution resorted to in the running of the trains themselves over dangerous places.

We do not think that employees, by accepting service with a badly

Wilson vs. North Western Railroad Company.

equipped railroad corporation, accept as a matter of course, the double risk of insufficient and bad tracks, and careless and negligent handling of cars over dangerous places. Two juries have found the facts of the case in favor of the plaintiff, and we see no good reason for holding them to have been in error in their conclusions. We see no questions of law standing in opposition to an affirmance of the judgment on the facts so found, though we are of the opinion that the amount found as damages is too high. No action was taken in the lower court upon defendant's plea of estoppel. It is insisted that the exception was well founded. We do not think so. It is rarely possible for a person injured by the derailment of a car to know with certainty to what particular cause it was attributable. In cases of that character a plaintiff's pleadings are made usually as general as safety will permit them to be made, so as to enable him to take advantage of the facts which may develop on the trial. He may sometimes, by too-minute particularity, be held down on a first trial to specific allegations as then existing, but, if on plaintiff's demand, being met by a general denial, the case should terminate in a judgment of non-suit, plaintiff would have the right in drafting a second petition to avail himself of knowledge of the actual facts of the case as made known to him through the testimony taken on the first trial. The allegations made in the first case as to the facts of the occurrence could certainly not be classed as "admissions" made by him from which he could not recede. In the case at bar, plaintiff insists still that the falling of the stick of wood was the direct, immediate, cause of the derailment of the car on which he was riding—he simply adds thereto certain other facts as concurring contributing causes.

We think the judgment should be amended by reducing the amount of the damages accorded to the plaintiff by the verdict and judgment from twenty-five hundred dollars to fifteen hundred dollars, and it is hereby so ordered and decreed.

### On Rehearing.

Nicholls, C. J. A rehearing was granted in this case for the reason that in examining the testimony scattered through three different transcripts, a portion of the same had escaped the court's attention. The statement made by the court that Beardsley, the manager of the defendant company, was on the train at the time of the accident, and that he had not testified in the case, was erroneous. The

Beardsley who was on the train was the son of the manager, or superintendent, and not the superintendent himself, and he was placed upon the stand and positively denied having given the orders to increase the speed of the train, to the giving of which orders several of defendant's witnesses testified.

The engineer, to whom the order was declared to have been given, made a similar denial.

The testimony in the case is utterly irreconcilable.

We do not know the witnesses, nor did we have the advantage of seeing them upon the stand.

Two juries have returned verdicts in plaintiff's favor.

The first verdict was set aside by the district judge, and plaintiff's counsel calls our attention to the fact, that while declining to set the second one aside on motion for a new trial, the judge expressed, very strongly, his disapprobation of the result reached, stating that he was more convinced than ever that plaintiff had no right to a judgment. That is true, but the judge's remarks seem to refer more to what he seems to have considered the law applicable to the case than to the facts.

He was of the opinion that although the track was out of order, yet the particular train to which the accident happened was a "repair train"; that plaintiff knew the condition of the track, and the dangerous character of the duty in which he was engaged, and therefore assumed the risk of the dangerous service.

He did say that he did not think the accident was occasioned by the bad condition of the track.

We are inclined, ourselves, to think that the latter fact, standing by itself and independently of the falling off from the tender of the piece of wood which the testimony shows did so fall off, would not have caused the derailment of the train, even at the rate at which it was going.

That the accident was occasioned by the concurrence of three facts—the bad condition of the track, the speed of the cars ,and the particular manner in which the wood was placed on the tender.

We did not think the wood, as placed, would have fallen from the tender simply as the result of the speed of the train, had the track been in good condition, nor that it would have fallen even with the track in the condition in which it was, had the speed been regulated so as to conform to what was required by the entire actual situation.

Wilson vs. North Western Railroad Company.

We thought that the wood was not placed on the tender in the manner in which it should have been placed there, to meet the requirements of a rapidly running train over a bad track.

That as it was, rapid running over a bad track had caused some of the wood in the tender, which had not been placed there in the manner to meet such a condition of things, to gradually work its way to the back of the tender, and to fall out, and by falling out to pass under the wheels of the car, and derail the train.

One of the difficulties in the case was that the wood, as placed in the tender, was placed there by the plaintiff himself, and the other parties who were working as laborers in repairing the track, in putting ties on the train, and, incidentally, in placing the wood in the tender.

We were of opinion that these men, however, could not have known in advance that the train would be run as it was afterwards probably run, and, besides this, the fireman, Sol Sephus, testified that after it was placed in the tender he had himself, to some extent, straightened it out.

Our judgment proceeded upon the theory that it was the duty of the party who controlled the train to have advised himself, before it started, not only as to one part of the existing situation, but of the whole, and to have governed himself thereafter accordingly, and that while it was true that this train was a "repair train," and the parties thereon may have assumed, in accepting the employment, that they might be in greater danger of accident than they would have been under other circumstances, they had the right also to assume that this very fact being known to the conductor, he would guide his conduct so as to minimize the dangers by the increased precautions, and the care which the occasion called for.

We did not think that the conductor, as representing the defendant company, had afforded to its employees the full measure of protection to which they were entitled.

We are of the opinion, and are still of the opinion, that a railroad company which permits its tracks to become unsafe, should be held to an increased responsibility for the manner in which its trains should be run over such a track.

The direct contradiction of the witnesses of the parties as to most important facts brought especially to our attention in our last examination of the transcripts in the case, coupled with the disagreement between two juries, and the district judge, have caused us to hold this

cause under advisement a longer time than is usual, for the reason that we have been in great doubt as to what the proper course would be to pursue under the circumstances.

After a most careful consideration of this case as presented to us, we adhere to our original judgment, except as to amount. We are of the opinion that the amount for which we have rendered judgment in favor of the plaintiff, against the defendant, is too large, and it is hereby reduced from fifteen hundred to one thousand dollars. As so amended, our original judgment must remain undisturbed, and it is so ordered.

MR. JUSTICE MONROE takes no part, as the case was submitted previous to his appointment to this court.